IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-384-FL

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY and NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| KEVIN P. CREASMAN; KANDY M. CREASMAN; HOLLY CREASMAN; and TYLER CREASMAN, | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendants' motion for partial judgment on the pleadings, motion to dismiss, and, in the alternative, motion to stay. (DE 7). The motion has been fully briefed and thus the issues raised are ripe for ruling. For the reasons that follow, the court grants in part and denies in part defendants' motion.

**STATEMENT OF THE CASE**

This case arises out of an underlying civil action ("underlying action") filed against defendants Kevin P. Creasman, Kandy M. Creasman, Holly Creasman, and Tyler Creasman, (collectively, "defendants"), as well as others. The underlying action was filed by Henry Van Buren and Magi Van Buren ("the Van Burens") on May 23, 2018, in the circuit court of Tennessee for the third judicial district at Morristown with the caption <u>Henry Van Buren and Magi Van Buren v. Kevin Creasman, Kandy Creasman, Holly Creasman, Tyler Creasman, John Lumb, Marnie Lumb,</u>

Bryan Lumb, and Erie Insurance Company, 18 CV 077, and asserts claims as to defendants for negligence, intentional misconduct, trover, conversion, personal injury, property damage, and punitive damages for acts and omissions committed by Holly and Tyler Creasman when they were minors and against their parents, Kevin and Kandy Creasman, arising out of negligent supervision.[1] The Van Burens allege they have sustained damages in excess of $10,000.000.00.

On August 2, 2018, plaintiffs filed this action seeking declaration there is no liability coverage for the claims brought against defendants in the underlying action pursuant to the following policies issued by plaintiffs to defendants: policy 6132HP379612 ("North Carolina homeowner's policy"), policy 6341HO390810 ("Tennessee homeowner's policy"), and policy 6132PU599285 ("umbrella policy") ("the policies"). (Compl. (DE 1) ¶10; DE 1-1; DE 1-2; DE 1-3). Plaintiffs attach to their complaint the policies as well the complaint filed in the underlying action.[2]

Defendants filed the instant motion on October 5, 2018, arguing that 1) plaintiffs have a duty to defend defendants and 2) plaintiffs' claim for declaratory judgment regarding its duty to indemnify is premature, or, in the alternative, a balancing of state and federal interests weighs in favor of staying this action until resolution of the underlying action occurs.

---

[1] The Van Burens originally brought claims against defendants in Tennessee state court on July 25, 2016. Plaintiffs filed its first declaratory judgment action in this court on October 20, 2016. See Nationwide Mutual Insurance Company et al v. Creasman et al, 5:16-CV-859-H. On May 25, 2017, the Van Burens voluntarily dismissed their claims, without prejudice. Thereafter, defendants and plaintiffs executed a partial settlement and tolling agreement, under which all time-related defenses were tolled until the earlier of May 25, 2018, or the date on which plaintiffs refiled its declaratory judgment action against defendants. As part of this agreement, defendants withdrew their claims for plaintiffs to defend and indemnify them against the Van Burens' first lawsuit; however, they preserved their rights to subsequently demand a defense and indemnification if the Van Burens refiled the same or similar claims against defendants. Plaintiffs then voluntarily dismissed its first declaratory judgment action, without prejudice, on September 5, 2017.

[2] It appears that some pages of the complaint from the underlying action have been omitted.

# STATEMENT OF THE FACTS

The facts alleged in the underlying complaint relevant to the resolution of the instant motion may be summarized as follows.

The Van Burens left Belcaro, their estate, to travel to Miami, Florida in early August, 2013. (See DE 1-4 ¶¶ 1,9). Before leaving, the Van Burens installed surveillance cameras throughout the property, which revealed the following acts.

On August 5, 2013, Holly Creasman and a female accomplice drove up to Belcaro's front door to "case" the house. Later, Tyler Creasman and another female accomplice joined them. The four teenagers looked repeatedly under flower pots and other ornamental items. The following day, Tyler Creasman drove up to Belcaro with his young child, his girlfriend, Holly Creasman, and her original female accomplice. Based on the camera footage, it appears that Tyler Creasman broke into Belcaro on August 6, 2013, just after 6 p.m.

Over the next three to four weeks, camera footage shows repeated incursions upon Belcaro by Holly and Tyler Creasman and others, wherein theft, vandalism, and attempted acts of vandalism occurred, including eventually the disabling of the surveillance cameras on September 12, 2013.

The Van Burens noticed a significant spike in their utility bill on December 31, 2013 and January 1, 2014, which the Van Burens allege was caused by a New Year's eve party thrown at Belcaro. Before leaving Belcaro for the last time, Holly Creasman, Tyler Creasman, or another person left open multiple skylights, doors and windows, causing the pipes to thereafter freeze and burst, thereby also causing the interior walls and floors to be irreparably damaged by water from both inside and out.

Most of the Van Burens' personal property inside the house was irreparably damaged or

3

outright destroyed. Upon returning to Belcaro several months later, the Van Burens found the following items missing and presumed stolen: a .357 Ruger handgun model 01707; an AR 15 rifle; two AK 47 rifles; $5,600.00 in cash; thousands of dollars' worth of expensive champagne and liquor; a $6,000.00 Rolex; numerous sports and entertainment trading cards, including a Mickey Mantle rookie card and cards featuring Yogi Berra, Hank Aaron, Johnny Bench, Wilt Chamberlain and Johnny Unitas; and numerous articles of clothing including several expensive suits and coats. Additionally, the Van Burens later discovered that antifreeze had been poured directly into their vehicles's crankshaft, destroying the engine of the $80,000.00 vehicle. Finally, the Van Buren's allege that "Magi Van Buren suffered a significant heart attack likely caused by the stress she was under." (DE 1-4 ¶ 38).

As relevant here, the Van Burens claim "damages resulting from negligence, intentional misconduct, trover and conversion," that "Kevin Creasman, Kandy Creasman . . . were all negligent in the supervision of their children by failing to prevent them from causing damages that were reasonably foreseeable," and that "Tyler Creasman, Holly Creasman . . . were negligent by allowing so many vandals and thieves into Belcaro after Holly Creasman 'cased' the property and Tyler Creasman broke into it." (DE 1-4 at 1, ¶¶ 45, 47).

## DISCUSSION

A.     Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In resolving a motion for judgment on the pleadings, the court must accept all of the nonmovant's factual allegations as true and draw all reasonable inferences in their favor.

4

Bradley v. Ramsey, 329 F.Supp.2d 617, 622 (W.D.N.C. 2004). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Id. The court is permitted to consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Although a motion for judgment on the pleadings pursuant to Rule 12(c) is separate and distinct from a motion to dismiss under Rule 12(b)(6), federal courts apply the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6). Indep. News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009); Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002); Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) ). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[,]" but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the plausibility standard requires a plaintiff to articulate facts, that, when

accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

B.  Analysis

    1.  Defendants' Motion for Partial Judgment on the Pleadings

In determining whether an insurer has a duty to defend its insured, North Carolina courts use the "comparison test," analyzing the insurance policy side-by-side with the underlying complaint, taking all of the claimant's allegations as true. Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 7 (2010).[3] As stated by the North Carolina Supreme Court,

> When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable. Consequently, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend.

Waste Management v. Peerless Ins. Co., 315 N.C. 688, 691 (1986) (citations omitted); see also Harleysville, 364 N.C. at 7 ("In addressing the duty to defend, the question is not whether some interpretation of the facts as alleged could possibly bring the injury within the coverage provided by the insurance policy; the question is, assuming the facts as alleged to be true, whether the insurance policy covers that injury.").

When pleadings allege multiple claims, some of which may be covered by the insurer and some of which may not, the mere possibility the insured is liable, and that the potential liability is covered, impose a duty to defend. Waste Management v. Peerless Ins. Co., 315 N.C. at 691 n.2 ("Of

---

[3] Defendants argue that "for purposes of this Brief, Defendants treat all three Policies as though North Carolina law governs," even though only the North Carolina homeowner's policy contains a choice of law provision stating North Carolina law governs whereas the other two policies do not contain such a provision. (DE 8 at 10 n.2; see also DE 1-1 at 68). Plaintiffs do not address this issue but cites, where applicable, only North Carolina law in briefing. (See DE 9).

6

course, allegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insured."). Also, any doubt as to coverage is to be resolved in favor of the insured. Id. at 693.

As relevant here, the Tennessee homeowner's policy provides for the following coverage:

Coverage E - Personal liability

We will pay damages an insured is legally obligated to pay due to an occurrence resulting from <u>negligent personal acts</u> or negligence arising out of the ownership, maintenance or use of real or personal property. We will provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability.

(DE 1-2 at 25 (emphasis added)).[4] The following coverage is also provided under "Coverage F – Medical payment to others": "We will pay the necessary medical . . . expenses incurred within three years after an accident causing bodily injury . . . To a person off the Insured location, if the bodily Injury . . . is caused by the activities of an Insured." (Id.). Occurrence is defined as "bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition." (Id.). Accident is thereafter defined as "an event which is sudden, unforeseen, and unintended." (Id. at 26).

The following exceptions apply to the above coverage:

1. Coverage E - Personal liability and Coverage F - Medical payments to others do

---

[4] Section II(A) of the North Carolina homeowner's policy also provides that if a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an applicable occurrence, plaintiffs will "[p]rovide a defense at [its] expense by counsel of [its] choice, even if the suit is groundless, false or fraudulent." (DE 1-1 at 35). The "Additional Coverages" provision of the umbrella policy further provides that plaintiffs "will defend a suit against an insured resulting from an occurrence covered by this policy. This applies even if the suit is groundless." (DE 1-3 at 8). Because of the court's holding above regarding the Tennessee homeowner's policy, it is unnecessary to address the exclusions found in the other two policies.

not apply to bodily injury or property damage:

>a) caused intentionally by or at the direction of an Insured, including willful acts the result of which the insured knows or ought to know will follow from the Insured's conduct . . .
>
>b) caused by or resulting from an act or omission which is criminal in nature and committed by an Insured. This exclusion 1.b) applies regardless of whether the Insured is actually charged with or convicted of a crime . . . .
>
>g) arising out of the ownership, maintenance or use of, or loading or unloading of; entrustment or the negligent supervision by an insured of; or statutorily imposed liability on an insured related to the use of: . . .
>
>>(2) a motor vehicle or all other motorized land conveyance owned by or operated by, or rented or loaned to an insured . . . .

(Id. at 27). Finally, this policy provides for the "Severability of Insurance" in that "[t]his insurance applies separately to each insured." (Id. at 31).

The underlying complaint alleges extensive damage to the Van Buren's home, in part due to the act of an unknown person leaving doors, windows, and skylights open; extensive loss of personal property; and bodily injury to Magi Van Buren when she suffered a heart attack. This property damage and bodily injury are in part alleged to have been caused by the intentional acts of Holly and Tyler Creasman, which plaintiffs argue is excluded by the policies, which defendants appear to concede. (See DE 9 at 4-5; DE 8 at 11-12). However, the underlying complaint additionally alleges negligence claims against the parents of Holly and Tyler Creasman, Kevin and Kancy Creasman, for negligent supervision of their children as well as negligence claims against Holly and Tyler Creasman for allowing others into the Van Burens' home. (See DE 1-4 at 1, ¶¶ 45, 47).

The allegations contained in the underlying complaint disclose a possibility that some or all defendants are liable for negligence and this potential liability may be covered by the Tennessee

homeowner's policy sufficient to impose a duty to defend upon plaintiffs. See Cont'l Cas. Co. v. Amerisure Ins. Co., 886 F.3d 366, 371 (4th Cir. 2018) (citations omitted) (holding under North Carolina law, "an insurer must defend its insured against a lawsuit unless no allegation is even arguably covered by the policy. Accordingly, if any of the allegations in the Miller complaint arguably fell within the coverage afforded by Amerisure, it had a duty to defend its insured in the underlying action").

Assuming the facts in the underlying complaint to be true and in consideration of the exclusion to coverage cited above, the Tennessee homeowner's policy would provide coverage for the negligent personal acts of Kevin and Kandy Creasman in not supervising their children which resulted in damages Holly and Tyler Creasman did not know or ought to know would follow from their intentional conduct, such as the water damage to the Van Buren's home or the heart attack suffered by Magi Van Buren; were not the result of an act or omission by Holly and Tyler Creasman which was criminal in nature as opposed to negligent; and did not arise out of the use of a motor vehicle. See N. Carolina Farm Bureau Mut. Ins. Co. v. Stox, 330 N.C. 697, 709 (1992) (holding "accident" may "include injury resulting from an intentional act, if the injury is not intentional or substantially certain to be the result of the intentional act."); see also id. at 708 ("As our rules of construction dictate, all ambiguities must be resolved in favor of the insured.).

Plaintiffs do not address plaintiffs' duty to defend regarding the negligence claims brought by the Van Burens against defendants. Instead, plaintiffs state only, without supporting case law, that the grant of coverage contained in the policies is subject to others provisions, conditions, and exclusions; that such relevant provisions are fully set forth in plaintiffs' complaint; and that "[i]t is abundantly clear from the Underlying action . . . that all of the Van Burens' allegations against the

9

Creasmans derive squarely from intentional and criminal acts, including but not limited to breaking and entering, trespass, theft, and vandalism." (DE 9 at 4-5).

Although plaintiffs make no specific argument nor references a particular provision, condition, or exclusion in briefing that applies to the court's analysis above, the court turns to the provisions provided by plaintiffs in complaint. In addition to the above provisions, plaintiffs have also included the following two provisions of the Tennessee homeowner's policy, arguing in complaint these provisions result "in no coverage under the Tennessee Homeowners Policy for the claims asserted against the Creasman Defendants in the Underlying Lawsuit," (Compl. (DE 1) ¶ 25):

> Additional liability coverages
>
> We will pay the following in addition to the limits of liability. These additional coverages are not subject to the Section II – Liability exclusions . . . .
>
> 3. Damage to property of others. We will pay for property damage to property of others caused by an insured regardless of legal liability. We will pay up to $1,000 per occurrence, but not more than the smallest of the replacement cost or the cost to repair the damaged property. We will not pay for property damage:
>
>> a) to property covered under Section I.
>>
>> b) caused intentionally by an insured who is age 13 or older.
>>
>> c) to property owned by or rented to an insured, a tenant of an insured, or a resident in your household.
>>
>> d) arising out of: . . .
>>
>>> (2) an act or omission in connection with a premises owned, rented, or controlled by an insured, other than an insured location.
>>>
>>> (3) the ownership, maintenance or use of a motor vehicle, aircraft, or watercraft.

(DE 1-2 at 26).

> 2. Coverage E – Personal liability does not apply to: . . .

        d) property damage to property rented to, occupied or used by, or in the care of an insured.

        This exclusion 2.d) does not apply to property damage:

        (1) caused by fire, smoke, or explosion; or

        (2) to house furnishings or premises rented to, occupied or used by or in the care of an insured for which the insured is legally liable.

(Id. at 29).

The above provisions do not alter the court's analysis. Both provisions address property damage, whereas here both property damage and bodily harm are alleged. Therefore, the court grants defendants' motion for partial judgment on the pleadings regarding plaintiffs' duty to defend defendants in the underlying action.

    2.      Defendants' Motion to Dismiss or, In the Alternative, Motion to Stay

In relevant part, the Declaratory Judgment Act provides that the court "may declare the rights and other legal relations of [the parties]." 28 U.S.C. § 2201(a). Whether a district court should exercise its jurisdiction to hear a declaratory judgment action is a matter within the court's discretion. Wilton v. Seven Falls Co., 515 U.S. 277, 282–83 (1995).

While an insurer's duty to defend may be determined upon commencement of the underlying action, its duty to indemnify cannot be determined until the conclusion of the case if necessary facts remain in dispute. Harleysville, 364 N.C. at 7 ("[I]n determining whether an insurer has a duty to indemnify, the facts as determined at trial are compared to the language of the insurance policy."); see also Penn-Am. Ins. Co. v. Coffey, 368 F.3d 409, 413 (4th Cir. 2004). ("Although an insurer's duty to indemnify will depend on resolution of facts alleged in the complaint, no such factfinding is necessary if there is no duty to defend because the allegations, even when taken as proved, would fall outside the policy's coverage.") (emphasis in original).

11

When there is a related state court proceeding pending, "a court considering a declaratory judgment action should specifically consider whether the controversy 'can better be settled in the proceeding pending in the state court.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257 (4th Cir. 1996) (quoting Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942)). "This consideration should be guided by a number of factors, including the nature and scope of the state proceeding, and 'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding . . . . '" Id. Additionally, in cases where there are parallel state proceedings, the court weighs the following four factors:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

Coffey, 368 F.3d at 412 (quoting Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir.1994)). Courts are not to "treat the factors as a 'mechanical checklist,' but rather should apply them flexibly in light of the particular circumstances of each case." VRCompliance LLC v. HomeAway, Inc., 715 F.3d 570, 573 (4th Cir. 2013) (citations omitted).

Consideration of the first two factors weigh in favor of the court retaining jurisdiction over plaintiffs' declaratory judgment action. However, the third factor weighs in favor of granting defendants' motion to stay the current proceedings pending outcome of the underlying action.[5]

Regarding the first factor, as argued by defendants, Tennessee may have "a strong interest in having the issues decided in its courts," where the underlying action in part involves a

---

[5] Defendants do not contend that plaintiffs are engaging in procedural fending and thus the fourth factor is not relevant to the present inquiry. (See DE 8 at 16).

12

determination of liability for four Tennessee residents with respect to conduct that is alleged to have occurred in Tennessee involving state-law claims. Pen-Am, 368 F.3d at 412; see also Riley v. Dozier Internet Law, PC, 371 F. App'x 399, 402 (4th Cir. 2010) (citations omitted) ("First, Virginia 'has a strong interest in having the issues decided in its courts.' This case requires a determination of the liability of a Virginia resident and a Virginia law firm, involves intellectual property registered in Virginia, and demands an application of Virginia trademark law."). State law ordinarily provides the applicable law in pure diversity cases, and the Fourth Circuit has acknowledged, "[t]here exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case." Mitcheson v. Harris, 955 F.2d 235, 237 (4th Cir. 1992).

However, in does not appear that the state-based claims in the underlying action present difficult or unsettled issues. Further, Tennessee does not have a strong interest in the issue presently before this court, whether plaintiffs have an obligation to indemnify based on contract interpretation grounded in North Carolina law. See United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 494 (4th Cir. 1998) (noting that the case involved standard issue of agency and contract interpretation wherein a federal court would be unlikely to break new ground or decide novel issues). Accordingly, this factor weighs in favor of the court retaining jurisdiction over this declaratory judgment action.

The second factor, whether the state court could resolve the issues more efficiently, "requires careful inquiry into 'the scope of the pending state court proceeding[s],' including such matters as 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, [and] whether necessary parties have been joined.'" Nautilus, 15

F.3d at 378–379 (citing Brillhart, 316 U.S. at 495) (first and second alterations in original). Because plaintiffs are not a party to the underlying action, "dismissing the federal coverage case would not seem to advance any cause of efficiency." Penn-Am., 368 F.3d at 414. Additionally, and more importantly, because plaintiffs are not a party to the underlying action, the underlying action will not adjudicate plaintiffs' claims, weighing heavily in favor of the court retaining jurisdiction over this case.

Third, the court must determine whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts, Penn-Am., 368 F.3d at 412, and it is this factor that counsels granting defendants' motion to stay. Here, the issues to be decided by the state court and the federal court are not the same, where the state court must determine defendants' liability and this court must determine plaintiffs' duty to indemnify. As previously stated, because plaintiffs are not a party to the underlying action, plaintiffs' claims will not be resolved by the underlying action.

However, whether plaintiffs have a duty to indemnify defendants hinges in part on whether the alleged property damage and bodily injury were caused by intentional acts excluding coverage under the policies.[6] Entanglement can result when the state and federal courts make conflicting decisions on issues of fact or law. See Nautilus, 15 F.3d at 377. As stated above, it does not appear the parties dispute that if the alleged property damage and bodily injury were caused by the intentional acts of Holly and Tyler Creasman, plaintiffs have no duty to indemnify regarding those

---

[6] Plaintiffs fail to provide the court with explanation of how this court would determine whether plaintiffs have a duty to indemnify defendants without first determining the issue of defendants' liability, the issue currently before the state court in the underlying action. Instead, plaintiffs argue without explanation that "there is no crossover whatsoever between the claims made by Nationwide in this litigation and the claims asserted by the Van Burens in the Underlying Action." (DE 9 at 7).

claims. (See DE 9 at 4-5; DE 8 at 11-12; see also, e.g., DE 1-2 at 27 (Tennessee homeowner's policy excluding coverage for property loss or bodily injury expected or intended from the standpoint of the insured)). However, such a determination in this instance regarding liability must be made prior to the determination of whether plaintiffs have a duty to indemnify.[7] Perdue Farms, Inc. v. Travelers Cas. And Sur. Co. Of Am., 448 F.3d 252, 257–58 (4th Cir. 2006) (citations omitted) ("The duty to indemnify, by contrast, refers to an insurer's responsibility to pay a monetary award when its insured has become liable for a covered claim. '[T]he duty to indemnify depends upon liability,' i.e., an insurer's obligation to pay a judgment or settlement.").

In sum, the court concludes the relevant factors weigh in favor of the court retaining jurisdiction over plaintiffs' declaratory judgment action, but also weigh in favor of granting defendants' motion to stay these proceedings pending outcome of the underlying action.

## CONCLUSION

Based on the foregoing, defendants' motion for partial judgment on the pleadings, motion to dismiss, and, in the alternative, motion to stay (DE 7) is GRANTED IN PART AND DENIED IN PART. Defendants' motion for partial judgment on the pleadings is GRANTED regarding plaintiffs' duty to defend defendants in the underlying action. Defendants' motion to dismiss is DENIED. Defendants' motion to stay this action is GRANTED pending outcome of the underlying action. The parties are DIRECTED to file no later than 40 days after such time the underlying action has been fully resolved, whether by settlement or trial and any appeal of the same, status report to

---

[7] Such an inquiry stands in contrast to the court's above analysis regarding plaintiffs' duty to defend. Above, the court "was presented with the task of determining whether the allegations of the complaint, if proved, would bring the claim within the coverage of the [insurance] policy." Penn-Am., 368 F.3d at 413. To resolve whether plaintiffs owed a duty to defend, "the court need only decide the scope of the contractual language," which is not at issue nor would be decided in the underlying action. Id. at 414.

the court, at which time the stay shall be lifted.

SO ORDERED, this the 11th day of April, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge